UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

LARRY STRICKLAND,
    Plaintiff,

vs.                                                                                          04-1200

STEPHEN D. MOTE, et. al.,
    Defendants.

    This cause is before the court for consideration of the defendant's motions for summary judgement. [d/e 70].

## I. BACKGROUND

    The plaintiff, Larry Strickland, originally brought this action pursuant to 42 U.S.C. §1983 alleging that his constitutional rights were violated at the Pontiac Correctional Center. The plaintiff has the following surviving claims against the defendants in their individual capacities:

    1) Defendants Hendrickson, Altenbaumer, Hall, Spencer, Boase, Beard, Parsano, Schnicker, Gabor, Miller, Moore, Schurthesis and Keith violated the plaintiff's Eighth Amendment rights when they gave him contaminated food trays;
    2) Defendants Beaupre and Hall violated the plaintiff's Eighth Amendment rights when they failed to protect him from inmate sexual assaults;
    3) Defendant Altenbaumer violated the plaintiff's First Amendment right of meaningful access to the courts when he interfered with the plaintiff's legal mail and caused a complaint to be dismissed;
    4) Defendant Hendrickson gave the plaintiff contaminated food in retaliation for the plaintiff's refusal to participate in a sexual relationship with the plaintiff;
    5) Defendants Spencer, Beaupre, Harvey and Young each used excessive force against the plaintiff in violation of his Eighth Amendment rights;
    6) Food Supervisor Runyon did not provide the plaintiff with nutritionally adequate food; and
    7) Defendants Gish and Mote were informed about the above conduct of the named correctional officers and took no steps to stop it.

    The defendants have filed a motion for summary judgement [d/e 70] and the plaintiff has filed a response. [d/e 73]. On June 19, 2006, the court noted that the defendants' motion contained hundreds of pages of medical records, and inappropriately asked the court to interpret the medical jargon and handwriting. The court ordered the defendants to provide an affidavit from a medical professional who was familiar with the plaintiff and his care. The doctor was to examine the medical records and inform the court: 1) whether there was any physical indication that the plaintiff receive contaminated food during the relevant time periods and 2) whether there was any physical indication or verbal notification that the plaintiff had been sexually assaulted

during the relevant time periods. The plaintiff was also given additional time to file a response to this affidavit.

The defendants have now provided an affidavit from the Illinois Department of Corrections Medical Director Dr. Elyea. [d/e 78]. The plaintiff has also filed a response to this affidavit .[d/e 50]. The motion, affidavit and both responses will be considered by the court.

## II. FACTS

The plaintiff did not respond to the defendants' statement of undisputed facts. The following facts are taken from the dispositive motion, the affidavits, the responses and other exhibits.

The plaintiff claims he was sexually assaulted in his sleep approximately 50 to 60 times from December of 2000 to October of 2005. However, the plaintiff states he was asleep during the sexual assaults and never saw his assailant. (Plain. Depo., p. 36-37). The plaintiff also cannot state the dates of the attacks. The plaintiff says he knows he was sexually assaulted because there was a solution "like grease" on his rectum when he woke up. (Plain. Depo, p. 47). The plaintiff says he named the officers as defendants because they worked on the nights he was attacked. The plaintiff admits he has no other evidence that any of the defendants raped him. In addition, the plaintiff stated in his deposition that Defendant Parsano did not sexually assault him. (Plain. Depo, p. 150)

The medical director for the Illinois Department of Corrections says he has reviewed the plaintiff's medical records. Mr. Willard Elyea says there is nothing in the medical records to indicate that Mr. Strickland was ever sexually assaulted. (Dr. Elyea Aff., p. 1) The only potential report to medical staff came on April 25, 2001. The plaintiff claimed that his stomach was scratched with a wire and he was sexually assaulted while he slept. The physician performed a physical examination and found no evidence of an assault.[1]

The plaintiff says he was served a general prison diet while at Pontiac Correctional Center. However, he claims he was served contaminated food trays that were laced with acid as well as an oily substance that gave him headaches, made him weak and made him lose weight. (Plain. Depo, p.5-20). The plaintiff says he never observed any officer put a foreign substance into his food. (Plain. Depo,p 157) The plaintiff does claim he gave an unidentified person samples of his food for testing, but it was a never tested for foreign substances. (Plain Reply, p. 1)

The plaintiff did report losing weight, but claimed he lost the weight at Tamms Correctional Center because "an officer was putting poison in my food." (Def. Ex, Bates No. 260) The treating medical professional stated that the plaintiff only lost two pounds in four months and also indicated that one of the medications the plaintiff was taking could lead to

---

[1] This claim would also not fall within the two year statute of limitations period since this lawsuit was filed on June 24,2004.

fluctuations in weight. Id.

In his deposition, the plaintiff stated that his only allegation against Food Supervisor Runyon is that the plaintiff told him someone was tampering with his food tray, and Runyon took no action. (Plain. Depo, p. 150)

Medical Director Dr. Elyea says he has reviewed the plaintiff's medical records and "[w]hile Mr. Strickland, on occasion, complained of digestive problems, nothing in these records contain any medical evidence to indicate that Mr. Strickland received contaminated food or suffered from symptoms of having ingested contaminated food." (Dr. Elyea Aff, p. 1)

The plaintiff says Defendant Altenbaumer gave his legal mail away to another inmate, but says his motions were filed with the court. (Plain. Depo, p. 117)

On October 30, 2002, the defendants claim they went to the plaintiff's cell to perform a shake down of the interior. Sergeant Kuhse spoke with the plaintiff who appeared calm. The sergeant then opened the cuffing hatch and the plaintiff stuck one arm out. Before the sergeant could finish cuffing the plaintiff, he stuck out his other hand with a toothpaste tube and squirted a substance on the officer that appeared to be urine and feces. As a result of this incident, Captain Harvey sprayed the plaintiff with pepper gas.

The plaintiff received a disciplinary report accusing him of assaulting the officer, damaging property and insolence. The plaintiff was found guilty of each offense and lost one year of good time credits.

Lastly, the plaintiff reported on February 18, 2004, that "an officer" closed the hatch on his right arm. An officer and nurse observed superficial abrasions on a finger and his right forearm. The nurse notes there was no other redness or swelling. The plaintiff was told to wash the area, and the nurse checked that he was up to date on tetanus shots.

Lastly, Medical Director Dr. Elyea states that the plaintiff's medical records contain several psychiatric evaluations which show an extensive history of delusional thinking.

### III. LEGAL STANDARD

The entry of summary judgment is proper only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56c. A "material fact" is one that "might affect the outcome of the suit." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine only if a reasonable jury could find for the nonmoving party. Id.

A party moving for summary judgment initially has the burden of showing the absence of any genuine dispute of material fact based on the evidence. Adickes v. S.H. Kress & Co., 398 U.S. 144, 153 (1970); Schroeder v. Barth, Inc., 969 F.2d 421, 423 (7th Cir. 1992). A nonmoving party cannot rest on its pleadings, but must demonstrate that there is admissible

evidence that will support its position. <u>Tolle v. Carroll Touch, Inc.</u>, 23 F.3d 174, 178 (7th Cir. 1994). The evidence and all reasonable inferences drawn therefrom are viewed in the light most favorable to the non-moving party. <u>Anderson</u>, 477 U.S. at 255. Nonetheless, "(s)ummary judgement is not a discretionary remedy. If the plaintiff lacks enough evidence, summary judgement must be granted." <u>Jones v. Johnson</u>, 26 F.3d 727, 728 (7th Cir. 1994).

## IV. ANALYSIS

The defendants have persuasively argued that the plaintiff has not presented any evidence to support any of his claims. The plaintiff's first allegation is that Defendants Hendrickson, Altenbaumer, Hall, Spencer, Boase, Beard, Parsano, Schnicker, Gabor, Miller, Moore, Schurthesis and Keith violated the plaintiff's Eighth Amendment rights when they gave him contaminated food trays. The plaintiff also alleges that Defendant Hendrickson gave the plaintiff contaminated food in retaliation for the plaintiff's refusal to participate in a sexual relationship with the plaintiff.

There is absolutely no evidence before this court that the plaintiff ever received a contaminated food tray. The plaintiff admits he never saw anyone put anything in his trays. Furthermore, it is simply impossible that the defendants could place acid or other foreign substances in the plaintiff's food trays and the plaintiff would suffer no medical problems or significant weight loss.

The plaintiff's complaint also alleged that Food Supervisor Runyon did not provide the plaintiff with nutritionally adequate food. Apparently the plaintiff has decided not to pursue this claim as he has presented no argument or evidence regarding it.

The plaintiff next alleges that Defendants Beaupre and Hall violated the plaintiff's Eighth Amendment rights when they failed to protect him from inmate sexual assaults. There is absolutely no evidence before this court that the plaintiff was ever sexually assaulted. The plaintiff cannot even identify one assailant although he claims he was attacked at least 50 times. The plaintiff's claims that he slept through each of these attack are too fantastic for legitimate consideration.

The plaintiff claims Defendant Altenbaumer violated the plaintiff's First Amendment right of meaningful access to the courts when he interfered with the plaintiff's legal mail and caused a complaint to be dismissed. The plaintiff has presented no evidence to this court that any interference with his legal mail prevented him from litigating a claim. <u>Lewis v. Casey</u>, 518 US. 343, 116 S. Ct. 2174, 2180 (1996)(an inmate alleging denial of access to the courts lacks even the standing to assert such a claim in the absence of actual injury, which means an adverse decision in, or inability to litigate, some concrete legal claim).

Lastly, the plaintiff has failed to state a legitimate excessive force claim against Defendants Spencer, Beaupre, Harvey and Young. The plaintiff has presented no evidence to support this claim. The defendants have provided evidence of one incident on October 30, 2002, in which the force used was the result of the plaintiff's attack on another correctional officer.

The plaintiff was disciplined as result and lost good time credits. *See* Heck v. Humphrey, 512 U.S. 477 (1994); Edwards v. Balisok, 520 U.S. 641 (1997).

The plaintiff has presented no evidence to support his claims and the defendants motion for summary judgement is granted.

**IT IS THEREFORE ORDERED that:**

**1) The defendants' motion for summary judgement is granted pursuant to Fed. R. Civ. P. 56. [d/e 70] The Clerk of the Court is directed to enter judgment in favor of the defendants in accordance with this order. The parties are to bear their own costs. This case is terminated.**

**2) The agency having custody of the Plaintiff is directed to remit the docketing fee of $150.00 from the plaintiff's prison trust fund account if such funds are available. If the plaintiff does not have $150.00 in his trust fund account, the agency must send 20 percent of the current balance, or the average balance during the past six months, whichever amount is higher; thereafter, the agency shall begin forwarding monthly payments from the plaintiff's trust fund account to the clerk of court each time the plaintiff's account exceeds $10.00 until the statutory fee of $150.00 is paid in its entirety. The filing fee collected shall not exceed the statutory filing fee of $150.00.**

**3) The plaintiff is responsible for ensuring the $150.00 filing fee is paid to the clerk of the court even though his case has been dismissed. Release from incarceration does not relieve the plaintiff of his obligation to pay the filing fee in full. The plaintiff must notify the clerk of the court of a change of address and phone number within seven days of such change.**

**4) The clerk is directed to mail a copy of this order to the plaintiff's place of confinement, to the attention of the Trust Fund Office.**

Enter this 29th day of August, 2006.

                                          s\Harold A. Baker
                    _____
                                        HAROLD A. BAKER
                                UNITED STATES DISTRICT JUDGE